### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JEFFREY W. LEWIS, D.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO.  CIV-08-0382-HE |
| | ) | |
| OKLAHOMA STATE BOARD OF | ) | |
| CHIROPRACTIC EXAMINERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER</u>

Plaintiff Jeffrey W. Lewis, D.C. sued the Oklahoma State Board of Chiropractic Examiners ("Board"), the individual Board members and others, asserting claims under 42 U.S.C. § 1983 and state law.  The court previously dismissed the plaintiff's claims against the Board.  The remaining defendants who have been served, the individual Board members and two Board employees – Beth Carter, the Board director, and Joseph English, her assistant – have filed a motion to dismiss or, alternatively, a motion for summary judgment.[1]  They have asked the court to dismiss the plaintiff's federal claims or enter summary judgment on those claims in their favor and then decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the movant is entitled to a judgment as a matter of law."  Fed.R.Civ.P.

---

[1]*Although the plaintiff recites the standard applicable to a motion to dismiss he does not assert that summary judgment is premature.  Instead, he responds to the defendants' factual statement and submits evidence in support of his claims.  The motion will, therefore, be treated as one for summary judgment.*

56(c).  Viewing the evidence and any reasonable inferences that might be drawn from it in

the light most favorable to the plaintiff, the nonmoving party, <u>Davidson v. America Online,</u>

<u>Inc.</u>, 337 F.3d 1179, 1182  (10th Cir 2003), the court concludes that the defendants' motion

should be granted in part and denied in part.  A summary of the pertinent facts follows.

On April 28, 2006,  the Board revoked the plaintiff's licence to practice chiropractic

medicine in the State of Oklahoma, having found that the plaintiff had misrepresented

information on his license application.  The revocation followed a hearing before the Board.

The plaintiff was given notice of the hearing, which he attended and at which he was

represented by counsel and given the opportunity to present evidence. The plaintiff appealed

the revocation to the District Court of Cleveland County, but did not appeal further when the

decision was affirmed.  He claims defendants Carter and English then raided his office on

May 15, 2006, or June 10, 2006,[2] without serving a warrant or subpoena on the plaintiff or

his counsel, and seized approximately 175 patient charts, instructed the patients at the clinic

to leave and find another physician, ordered his employees to exit and leave their keys on the

reception desk, and locked the doors to his office.  The plaintiff was not present at the time.

The seized charts were not returned, the plaintiff asserts, until eight weeks later.   The

business searched was  the West Norman Chiropractic and Rehabilitative Health Center, Inc.,

P.C., which the plaintiff had incorporated.

_____

[2]*The complaint, which was verified by plaintiff, alleges the search was on June 10, 2006.
In his response brief to the current motion, plaintiff maintains the date was May 15, 2006, with the
latter assertion also being supported by an affidavit of plaintiff.  The discrepancy does not affect the
court's determination of the present motion.*

The plaintiff applied six times to have his license reinstated.  The Board denied the application each time and defendant Carter no longer accepts the plaintiff's applications.  The plaintiff claims the Board, in the process of denying his applications, failed to follow its own policies and rules and never notified him in writing of the reasons for disapproval as required by 59 Okla. Stat. §161.7(A)(3).  The plaintiff did not appeal from the Board's denials, asserting that he has "included that unlawful action in this cause."  Plaintiff's response, p. 3 ¶ 8.

The plaintiff contends that the defendants violated his  Fourth Amendment and due process rights under the United States Constitution and his rights under the Oklahoma Constitution to be free from warrantless seizures and to receive due process.  He also asserts that the Board divested him of his ownership interest in his property/office and patients without notice or the opportunity to be heard.   In addition to money damages, he seeks an order vacating the Board's order revoking his license and reinstatement of his license.[3]

 The members of the Board are protected by absolute immunity from liability to the plaintiff for any claims seeking monetary or injunctive relief that are premised on either the revocation of his license or the denials of his applications for reinstatement.[4]  Guttman v.

---

[3]*In his response brief the plaintiff asserts that his claims are based solely on conduct that occurred after the revocation of his license.  However, because he requests that his license be reinstated in his complaint , the court has addressed the defendants' argument that the plaintiff may not challenge the Board's decisions to revoke his license and deny his applications for reinstatement.*

[4]*While judicial immunity might not cloak the surveillance allegedly conducted by defendant Tripp  or his alleged directions to defendant Carter to call or send letters to the plaintiff, the alleged conduct does not violate the plaintiff's federal constitutional rights.*

Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006).[5]  ("For an official at an administrative hearing

to be protected by absolute immunity '(a) the officials' functions must be similar to those

involved in the judicial process, (b) the officials' actions must be likely to result in damages

lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the

regulatory framework to control unconstitutional conduct.'") (quoting Horwitz v. State Bd.

of Med. Examiners, 822 F.2d 1508, 1513 (10th Cir.1987)).  See 59 Okla. Stat. § 161.12; 75

Okla. Stat. §§309-310, 314, 318, 323.[6]  The plaintiff's claim based on his license revocation

also is barred by the Rooker-Feldman doctrine.  See Guttman, 446 F.3d at 1031("[A] federal

district court does not have subject matter jurisdiction to review a case that was resolved by

state courts.").[7]  To the extent that plaintiff asserts claims against any defendant arising out

_____

[5]*As for his claim against the Board for injunctive relief, 42 U.S.C. § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." Lawrence v. Kuenhold, No. 06-1397, 2008 WL 822458, at \*3 n.6 (10th Cir. March 27, 2008) ("Thus, the doctrine of judicial immunity now extends to suits against judges where a plaintiff seeks not only monetary relief, but injunctive relief as well.") (unpublished).*

[6]*The court need not determine whether the Board staff are, as the defendants argue, entitled to immunity with respect to the plaintiff's claims pertaining to the revocation of his license or the denials of his applications, as those actions were taken by the Board itself.  Plaintiff does not appear to assert any claim against the staff members based on these decisions.*

[7]*The doctrine does not bar the plaintiff's claims to the extent they are based on the Board's denials of his applications for reinstatement.  See Van Harken v. City of Chicago, 103 F.3d 1346, 1349 (7th Cir. 1997) ("It might appear by parity of reasoning that a party to a state administrative proceeding is not authorized to bypass the appellate remedy that the state has provided in its own courts by filing an action in federal district court instead. Countless cases, however, allow people who lose in state administrative proceedings to seek relief in federal district court under civil rights legislation such as 42 U.S.C. § 1983; and Patsy v. Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), expressly rejected a requirement of exhausting administrative remedies before suing under that section.").*

of the revocation of his license or the refusals to grant new ones, summary judgment will be entered for the defendants.

As for the plaintiff's claims that are based on the search and seizure of his business, an individual's status as sole shareholder of a corporation, alone, is generally not sufficient to confer upon him or her standing to assert the corporation's Fourth Amendment rights. However, "[i]n some circumstances, an officer of a corporation may be a 'person aggrieved' by a corporate search and seizure and thus have standing to challenge the search." United States v. Mohney, 949 F.2d 1397, 1403 (6th Cir. 1991). For example, in Henzel v. United States, 296 F.2d 650 (5th Cir. 1961), the Fifth Circuit held that the sole stockholder and president of a corporation had standing to challenge the seizure of corporate books and records when the individual had prepared much of the confiscated material, which was kept in his office along with his personal belongings.[8]

The record before the court is insufficient for it to determine definitively whether the plaintiff had a reasonable expectation of privacy in the seized materials. *See generally* Mohney, 949 F.2d at 1403 ("Where the documents seized were normal corporate records not personally prepared by the defendant and not taken from his personal office, desk, or files, in a search that was not directed at him personally, the defendant cannot challenge a search as he would not have a reasonable expectation of privacy in such materials."). Here, where the plaintiff was the sole shareholder of, and the principal "professional" in, the professional

---

[8]*The defendant in* Henzel *had moved under Fed.R.Crim.P. 41 to suppress the seized evidence.*

corporation whose premises was searched and where at least some of the seized materials include patient records generated by plaintiff as to his patients, an ultimate conclusion that standing exists to challenge the search appears likely.[9]  However, because of the procedural posture of this case, the defendants will not be precluded from reasserting their standing argument in a subsequent dispositive motion if further development of the facts makes such an argument plausible.[10]

Accordingly, the defendants' motion for summary judgment [Doc. #11] is **GRANTED in PART** and **DENIED in PART**.  Judgment in defendants' favor will be granted at the conclusion of the case insofar as plaintiff's claims are based on the decisions to revoke his license or deny his re-applications.  *See* Fed.R.Civ.P. 54(b).  The motion is otherwise denied, with the case to proceed as to claims premised on the allegedly wrongful search and/or seizure.

---

[9]*That plaintiff may have standing to challenge the search does not mean that he is entitled to recover personally for damages that may have been sustained by the corporation.  See generally Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc., 295 F.3d 1065, 1072-73 (10th Cir. 2002); Manheim Auto. Fin. Servs., Inc. v. Forshee Auto Sales, Inc., No. 03-4285, 2004 WL 2810222, at \*4 (10th Cir. Dec. 8, 2004)(unpublished).*

[10]*In their reply brief the defendants argue for the first time that the plaintiff's claims based on the search and seizure fail as to most of the Board members because of their lack of personal participation in the alleged unconstitutional conduct.  Although the defendants acknowledge this is a new argument and explain why it was not raised in their initial brief, as the plaintiff has not had the opportunity to address this argument the court will not consider it at this time.*

**IT IS SO ORDERED**.

Dated this 24th day of June, 2008.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE