**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JEFFREY W. LEWIS, D.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-08-0382-HE |
| | ) | |
| OKLAHOMA STATE BOARD OF | ) | |
| CHIROPRACTIC EXAMINERS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Jeffrey W. Lewis, D.C. sued the Oklahoma State Board of Chiropractic Examiners ("Board"), the individual Board members and others, asserting claims under 42 U.S.C. § 1983 and state law. The court previously dismissed the plaintiff's claims against the Board and defendant Beth Carter, Board director,[1] and granted summary judgment in favor of the remaining defendants with respect to all but the plaintiff's claims premised on an alleged wrongful search and/or seizure.[2] The individual Board members and Board employee Joseph English, the Board director's assistant, now seek summary judgment on the plaintiff's remaining claims.[3]

---

[1]The plaintiff's claims against defendant Beth Carter, who filed for relief under Chapter 13 of the Bankruptcy Code, were dismissed without prejudice.

[2]The plaintiff contends that the defendants violated his Fourth Amendment rights under the United States Constitution and his rights under the Oklahoma Constitution to be free from warrantless seizures. As the parties cite only federal law in their briefs, the court assumes the analysis is the same for the plaintiff's seizure claim, to the extent it is based on the Oklahoma Constitution.

[3]Some ambiguity exists as to the exact nature of the underlying constitutional violation. However, as alleged in the complaint and discussed to some extent in the briefs, the claim is based, at least in part, on the seizure and removal of patient medical records from the chiropractic clinic

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. Viewing the evidence and any reasonable inferences that might be drawn from it in the light most favorable to the plaintiff, the nonmoving party, Davidson v. America Online, Inc., 337 F.3d 1179, 1182 (10th Cir 2003), the court concludes that the defendants' motion should be granted in part and denied in part. A summary of the pertinent facts follows.

The plaintiff was a licensed chiropractor in the State of Oklahoma from January 7, 1997 until April, 2006. He operated and was the sole shareholder of West Norman Chiropractic ("WNC"), a professional corporation. On March, 28, 2006, the Board revoked the plaintiff's license to practice chiropractic medicine in the State of Oklahoma. The revocation was stayed/made effective April 28, 2006, to allow the plaintiff time "to transfer the care of his patients with critical conditions to other health care providers." Defendants' Exhibit 1, pp. 6-7. Dr. Ben Sanders began working at WNC on May 1, 2006, treating the plaintiff's former patients.

On May 16, 2006, Beth Carter received information from an anonymous telephone caller that the plaintiff was still practicing chiropracty. Plaintiff's Exhibit 1, p. 170. Upon the advice of counsel she had an administrative subpoena issued to Jeffrey Lewis, D.C. for the production of "[a]ll medical records, claims, documents and/or forms which indicate name of patient(s) from the following dates of service March 28, 2006 to present." Plaintiff's

---

*operated by the plaintiff.*

Exhibit 6. Ms. Carter proceeded on that date with her assistant, defendant English, and two deputies from Cleveland County to WNC to serve the subpoena. When they arrived at WNC, Carter and English were informed that the plaintiff was not present. Ms. Carter handed the subpoena to a WPC employee, Quinn McNeil, Jr., and the receptionist handed her patient treatment cards or records.[4] It is unclear whether Ms. Carter and defendant English remained the entire time at the receptionist desk,[5] *see* plaintiff's Exhibit3, pp.22; defendants' Exhibit 9, pp. 22-23, or walked through other areas of the facility.

Ms. Carter told Dr. Sanders that he could not practice in that clinic anymore. She also told two patients who were in the clinic when she arrived, and another patient or two who showed up for treatment, that the office was going to be closed until further notice. She had the employees put a sign on the door and message on the answering machine that the office would be closed until further notice. She instructed the employees to place their keys on the counter[6] and escorted everyone out. The clinic was closed for a week until the plaintiff hired Dr. Wade. The patient records were returned eight weeks later.

## ANALYSIS

The defendants claim they are entitled to summary judgment because the plaintiff

---

[4] Apparently the charts turned over to Ms. Carter contained the doctors' notes and treatment information and were kept in the reception area. Plaintiff's Exhibit 4, pp. 22, 25-26; defendants' Exhibit 10, pp. 12-13.

[5] The plaintiff testified that he "just remember[ed] somebody said they were throughout my office." Plaintiff's Exhibit 2, p. 139.

[6] One employee was allowed to keep a key so he could feed some fish that were in the clinic.

lacks standing to challenge the alleged search and seizure, because neither the Board members nor defendant English participated in any alleged constitutional violation and because they are entitled to qualified immunity. The plaintiff responds that, as the sole corporate shareholder and principal professional in the professional corporation, he had a reasonable expectation of privacy in the patient records that were seized. He also argues that the board members can be held individually accountable for the asserted constitutional violation and are not entitled to qualified immunity.

The defendants reassert their argument that the plaintiff lacks standing to bring a Fourth Amendment claim because "the alleged search and seizure was executed against a corporation while the Plaintiff was not even present, and the items taken by the Defendant were solely corporate records." Defendants' motion, p. 7. The court rejected this defense earlier on the ground the record before it at that time was insufficient for it to determine definitively whether the plaintiff had a reasonable expectation of privacy in the seized materials. June 24, 2008, Order, p. 5. In that order the court indicated it appeared likely that it would ultimately conclude that the plaintiff had standing to pursue his Fourth Amendment claim.

Notwithstanding the previous references by the court and parties, it is questionable whether the issue raised by defendants' motion should even be viewed as one of "standing." The concept of standing is often central to the ability of a criminal defendant to object to a search or seizure of property belonging to another. In that context, the general rule is that an individual's status as sole shareholder of a corporation, alone, is not enough to confer

standing for him or her to assert the corporation's Fourth Amendment rights. *See* Galbraith v. United States, 387 F.2d 617, (10th Cir. 1968) ("The guarantees of the Fourth and Fifth Amendments are essentially personal privileges that cannot be projected to the seizure of papers and effects of another ...."). However, "[i]n some circumstances, an officer of a corporation may be a 'person aggrieved' by a corporate search and seizure and thus have standing to challenge the search." United States v. Mohney, 949 F.2d 1397, 1403 (6th Cir. 1991). Here, however, the question is not who may object to a search or seizure in a criminal context, but whether this plaintiff has a claim, based on his interest in the seized records, for which he may recover. The "standing" cases are somewhat helpful in analyzing whether plaintiff has a protectible interest in the records, but the question is ultimately whether the law recognizes a substantive right of recovery in these circumstances, rather than an as issue of "standing" in any strict sense. It is a question of whether Dr. Lewis has a claim, not whether he is entitled to assert a claim on behalf of the corporation.[7]

The plaintiff in this case was the sole shareholder of the professional corporation whose premises were searched. The subpoena was addressed to him. The documents seized were medical records which Dr. Lewis, as the sole practitioner in the office until April 28, 2006, had helped prepare and in which he had an interest. In these circumstances, the court

---

[7]*As noted by the court previously, June 24, 2008, Order, p. 6, n.9, recognizing that the plaintiff has a claim based on the search does not mean he is entitled to recover personally for damages sustained by the corporation. He would be entitled to recover only for damages that he suffered as a result of the search/seizure. And in the circumstances existing here, where the plaintiff was not licensed to practice at the time the records were seized and in the period thereafter, it is difficult to see how plaintiff could recover meaningful actual damages even if he prevails on the merits.*

concludes the plaintiff has a potential claim based on the search and seizure of the records. *See generally* Becker v. Kroll, 494 F.3d 904 (10th Cir. 2007) (Physician asserted claims under § 1983 based on subpoenaing of her patients' medical records).

However, although plaintiff can assert a claim based on the search, he has not, in connection with the present motion, shown the existence of a material fact question precluding summary judgment for most of defendants as to that claim. With the exception of Dr. Tripp, the undisputed facts reflect the absence of any basis for a claim against the Board member defendants or against defendant English. The plaintiff admits in his response brief that "Mr. English ... merely witnessed the proceedings between Beth Carter and WNC personnel," plaintiff's response, p. 20, and the parties' evidentiary submissions substantiate that statement. *See e.g.*, plaintiff's Exhibit 4, pp. 24., 28-30. Liability for violating the plaintiff's Fourth Amendment rights cannot be based on defendant English's mere presence at the scene, when "the record makes clear that [defendant English] did not assist or direct [Ms. Carter] " in effecting the alleged illegal search and seizure. Novitsky v. City of Aurora, 491 F.3d 1244, 1254 (10th Cir. 2007).

The Board members, save Dr. Tripp, are similarly entitled to summary judgment due to their lack of involvement in the alleged constitutional violation. The plaintiff does not mention the other Board members individually in his brief. He does state that "the Board had Ms. Carter draft and serve the subpoena that is at the center of this legal action," plaintiff's response, p. 2, and that "[a]ctions of the Board's own representatives document their effort to get Dr. Lewis ...." *Id*. p. 17. However, plaintiff cites nothing to support this assertion and

a conclusory assertion in a brief is not sufficient to raise a justiciable fact question.  He also claims the Board members failed to hire a "seasoned Executive Director" and an investigator, and failure to promulgate administrative rules and direct office personnel.  As noted by the defendants, these latter contentions are new.  Until now the plaintiff has based the Board members' individual liability on their allegedly having "authorized, condoned, consented, and ratified the conduct of Defendants Beth Carter and Joseph English in the conduct of the ... raid."  Complaint, p.8, ¶ 32. The plaintiff will not be allowed, in his response brief, to assert a new basis for the Board members' individual liability, particularly when no other has been shown.

      The plaintiff has, though, submitted sufficient evidence to create a fact question as to Dr. Tripp's involvement in the alleged unconstitutional seizure.  Ms. Carter acknowledged that on May 16, 2006, she was copied on emails Dr. Tripp sent the Board's legal counsel regarding Lewis, which apparently indicated he had been talking to the assistant city attorney and an investigative police department team.  One of the emails he sent apparently contained legal citations.[8]  Dr. Tripp also phoned the Board office on May 16th.  This and other evidence proffered by the plaintiff creates a jury question as to whether Dr. Tripp personally directed, or had actual knowledge of and acquiesced in, the asserted constitutional violation. *See* Poolaw v. Marcantel, ___ F.3d ___, ___2009 WL 1176466, at *7 (10th Cir. 2009) ("For liability under section 1983, direct participation is not necessary. Any official who 'causes'

---

[8]*None of these emails were provided to the court, but this characterization of them appears to be undisputed.*

a citizen to be deprived of her constitutional rights can also be held liable. The requisite causal connection is satisfied if the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights.") (internal quotation omitted).

As to the remaining claim against Dr. Tripp, the final issue to be addressed is that of qualified immunity. Viewing the record and drawing the reasonable inferences from it in the light most favorable to the plaintiff, the court concludes it would have been clear to a reasonable state employee or her supervisor that an administrative subpoena directing a particular person (here, Dr. Lewis) to produce documents is not the same thing as a search warrant or seizure warrant authorizing either the search of the facility or the seizure of particular records.[9] Such actions went significantly beyond what the administrative subpoena purported to authorize. *See* <u>Smith v. Cochran</u>, 339 F.3d 1205, 1211 (10th Cir. 2003) ("Government officials are entitled to qualified immunity from liability for civil damages under §1983 when their 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)).

Accordingly, the defendants' motion for summary judgment [Doc. #51] is **granted** with respect to the plaintiff's claims against defendant English and all Board members in their individual capacities, except for Dr. Tripp. As to Dr. Tripp, the motion is **denied**.

---

[9]*There was evidence that Ms. Carter said she was there to "collect the records and shut the place down ...." Plaintiff's Exhibit 3, p. 50.*

Judgment will be entered when the case is concluded as to all claims and parties. Fed.R.Civ.P. 54(b).[10]

**IT IS SO ORDERED**.

Dated this 15th day of May, 2009.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[10]*The defendants' motion to supplement [Doc. #59] is **granted**. The case cited by the defendants, <u>Becker</u>, 494 at 904, does not, however, affect the court's analysis. The subpoena in <u>Becker</u> was issued with the permission of a state judge and provided that Becker, whose medical records were subpoenaed, could refuse to turn over the records and contest the subpoena a few days later. Becker decided not to challenge it and instructed her staff to produce the records immediately. They were removed from her office but were copied and returned the same day.*